UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

XEROX CORPORATION,

                                Plaintiff,

                                                       Case # 20-CV-6263-FPG

v.

                                                       DECISION AND ORDER

MONUMENT PEAK VENTURES, LLC,

                                Defendant.

## INTRODUCTION

Plaintiff Xerox Corporation ("Xerox") brings this declaratory judgment action, alleging that it has not infringed upon certain patents held by Defendant Monument Peak Ventures, LLC ("MPV"). ECF No. 1. Presently before the Court are two matters. First, MPV moves to dismiss the case for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). ECF No. 13. Xerox opposes the motion and requests jurisdictional discovery. ECF No. X. Second, Xerox moves to have attorneys Raghav Krishnapriyan and Catherine Y. Kim admitted to this Court *pro hac vice*, in order to appear in this action. ECF Nos. 25, 26. For the reasons that follow, the Court will permit limited jurisdictional discovery on specific personal jurisdiction, and Defendant's motion to dismiss is therefore DENIED WITHOUT PREJUDICE. Xerox's motions for *pro hac vice* admission are GRANTED.

## BACKGROUND

The following facts are from the complaint, unless otherwise noted. Xerox is a corporation based in Rochester that designs and manufactures, *inter alia*, office printer devices. MPV is a

limited liability company organized and based in Texas.  Xerox alleges that MPV exists solely "to acquire and then assert patents against companies."  ECF No. 1 at 1.

Starting in April 2019, MPV began contacting Xerox about eight patents it owns.  Over the course of several months, MPV tried to "convince Xerox to license" its patents.  *Id.* at 4.  When that failed, MPV threatened litigation, asserting that some of Xerox's products infringed on the patents.  *Id.* at 4-5.  In response, Xerox filed the present action.  ECF No. 1.  It seeks a declaratory judgment that it has not infringed on any of MPV's eight patents.

### DISCUSSION

The Court begins by addressing the motion to dismiss, before turning to the motions for *pro hac vice* admission.

### I.   Personal Jurisdiction

MPV moves to dismiss the case due to lack of personal jurisdiction.  Xerox counters that this Court has personal jurisdiction over MPV and that, if there is any question as to that issue, jurisdictional discovery is warranted.

As will be discussed below, the Court agrees with MPV that, even looking at the record evidence and the complaint in the light most favorable to Xerox, Xerox has not made a sufficient showing that this Court has personal jurisdiction over MPV.  However, the Court also concludes that Xerox has made a "sufficient start toward establishing personal jurisdiction" to justify limited jurisdictional discovery.  *McDonough v. Cycling Sports Grp., Inc.*, 392 F. Supp. 3d 320, 329 (W.D.N.Y. 2019).  Therefore, the Court denies MPV's motion without prejudice to refiling upon the completion of such discovery.

"A defendant may move to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2)."  *JetBlue Airways Corp. v. Helferich Patent Licensing, LLC*,

960 F. Supp. 2d 383, 390 (E.D.N.Y. 2013).  In a patent action such as this, "the existence of personal jurisdiction is, under Federal Circuit law, determined in accordance with the law of the Court of Appeals for the Federal Circuit." *Id.*; *see also Arquest, Inc. v. Kimberly-Clark Worldwide, Inc.*, No. 07-CV-1202, 2008 WL 2971775, at *4 (S.D.N.Y. 2008).  Where discovery has not been conducted, the plaintiff need only make a *prima facie* showing that the defendant is subject to personal jurisdiction. *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008).  The Court must construe all pleadings, affidavits, and other written materials in the light most favorable to the plaintiff.  *See id.*; *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009).

"A court has personal jurisdiction over a nonresident defendant if the forum state's long-arm statute permits service of process and the assertion of personal jurisdiction comports with due process." *New World Int'l, Inc. v. Ford Global Techs., LLC*, 859 F.3d 1032, 1037 (Fed. Cir. 2017).  Because the assertion of personal jurisdiction would not comport with due process under the present circumstances, the Court need not address whether New York's long-arm statute applies.[1]

There are two categories of "personal jurisdiction under the Due Process Clause: specific and general."  *Dong Chul Kim v. Harte Hanks, Inc.*, 425 F. Supp. 3d 246, 255 (S.D.N.Y. 2019).  "General jurisdiction, on one hand, requires that the defendant have 'continuous and systematic' contacts with the forum state and confers personal jurisdiction even when the cause of action has no relationship with those contacts."  *Oxford*, 566 F.3d at 1017 (internal quotation marks omitted).  "Specific jurisdiction, on the other hand, must be based on activities that arise out of or relate to the cause of action, and can exist even if the defendant's contacts are not continuous and systematic."  *Id.*  Xerox argues that personal jurisdiction is appropriate under both categories.

---

[1] Contrary to Xerox's argument, the Court does not read MPV's brief to concede "through silence" that general jurisdiction is proper as a matter of due process.  ECF No. 24 at 19 n.6; *see* ECF No. 13-5 at 15-18; ECF No. 27 at 6.

### a.  General Jurisdiction

A plaintiff bears a higher burden to establish general personal jurisdiction.  "[W]here a plaintiff's claims do not arise out of or relate to the defendant's contacts with the forum State," a court must "explore the nature" of the defendant's contacts with the forum state "to determine whether they constitute . . . *continuous and systematic* general business contacts."  *Avocent*, 552 F.3d at 1330.  This is a difficult standard to meet.  "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there."  *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as *at home*"—usually, the place of incorporation and principal place of business.  *Id.* (emphasis added).  To be subject to general personal jurisdiction beyond those locations, the corporation must engage in activities that are so "substantial" and "of such a nature as to render the corporation at home in that State."  *In re Roman Catholic Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 39 (2d Cir. 2014) (emphasis omitted).  Such situations are rare.  *See Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 498 (2d Cir. 2020) (noting that it is only in a "truly exceptional case" that a corporate defendant will be treated as "at home" in forums other than "where it is incorporated or maintains its principal place of business").

Nevertheless, Xerox contends that the following business contacts suffice to establish general jurisdiction: (1) MPV "engaged in a year-long campaign of correspondence with Xerox that included [the exchange of documents] and threats to file suit"; (2) as part of that campaign, MPV communicated with Xerox by videoconference, by phone, and in writing; (3) MPV entered into licensing agreements for some of the disputed patents with other companies having ties to New York; (4) an MPV representative travelled to a business conference in New York on one

occasion; (5) the patents at issue were once held by Kodak, a New York-based company; (6) MPV and an affiliated entity, Dominion Harbor Group ("Dominion"), filed a number of lawsuits pertaining to unrelated patents in New York;[2] (7) Dominion partnered with a New-York based company to license other patents in its portfolio; and (8) in 2016, Dominion and Xerox entered into a nondisclosure agreement concerning unrelated patents.

Simply put, these allegations do not constitute a *prima facie* showing of general jurisdiction. Xerox does not appear to dispute that MPV and Dominion are incorporated and based in Texas. *See* ECF No. 1 at 3; ECF No. 24 at 16. Under *Daimler*, state of incorporation and of principal place of business are the two "paradigm" affiliations with a state that will "render a defendant amenable to all-purpose jurisdiction," *Daimler*, 571 U.S. at 137, and neither applies here.

While a foreign business's activities in the forum state may nonetheless be so substantial and continuous as to render it "at home" in that state, MPV and Dominion's activities fall far short of that standard. The fact that MPV and Dominion have done business with numerous companies based in or having ties to New York is insufficient. *See, e.g.*, *Daimler*, 571 U.S. at 139 (noting that it is not enough that "a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic'"); *Chen*, 954 F.3d at 500 (fact that franchisor had "numerous retail establishments in New York" was insufficient to establish general jurisdiction); *Kane v. Island Vibes Tours*, No. 17-CV-506, 2018 WL 502614, at *2 (E.D.N.Y. Jan. 19, 2018) ("[W]hether [the defendant] does business [in New York], even if it does business here with regularity, is no longer enough [since *Daimler*]."). Likewise, the fact that MPV and Dominion have made use of New

---

[2] Xerox contends that the Court may properly consider Dominion's contacts with New York in assessing personal jurisdiction as to MPV. *See* ECF No. 24 at 14-17. The Court assumes, without deciding, that it may do so. *See Celgard, LLC v. SK Innovation Co., Ltd.*, 792 F.3d 1373, 1379 (Fed. Cir. 2015) (discussing the circumstances under which the contacts of a third party may be imputed to a defendant for purposes of personal jurisdiction).

York's court system is insufficient.  *See, e.g.*, *Al Haj v. Pfizer Inc.*, 338 F. Supp. 3d 741, 750-51 (N.D. Ill. 2018) (collecting cases).

The cases Xerox cites are distinguishable because they predate the Supreme Court's decision in *Daimler*.  *See* ECF No. 24 at 12-13.  Under *Daimler*, a foreign business's activities in the forum state must be so "significant or exceptional" in relation to its overall business that the forum state is akin to the state of incorporation or its business headquarters.  *See, e.g.*, *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952) (Philippine mining corporation subject to general jurisdiction in Ohio where it had ceased all mining activities abroad and all business was conducted through Ohio office).  Neither Xerox's allegations nor the record evidence come close to that standard.

Xerox has not met its burden of showing that MPV is subject to general personal jurisdiction in New York.

### b.  Specific Jurisdiction

The Court turns to Xerox's claim that specific jurisdiction exists.  "Where a defendant is not subject to general personal jurisdiction in the forum state, a district court may nonetheless exercise specific personal jurisdiction over the defendant subject to a three part test":

> (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair.

*Oxford*, 566 F.3d at 1018.  The plaintiff bears the burden of "affirmatively establishing the first two elements of the due process requirement."  *Celgard, LLC v. SK Innovation Co., Ltd.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015).  "With respect to the last prong, the burden of proof is on the defendant, [who] must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *Avocent*, 552 F.3d at 1332.

Xerox argues that MPV's "extensive" licensing discussions and litigation threats, which were directed towards Xerox in New York, are sufficient to subject MPV to personal jurisdiction in New York.  ECF No. 24 at 19-22.  The Court disagrees.

The Federal Circuit has stated that "ordinary cease-and-desist notices sent by a patentee to an alleged infringing party in a different state are not sufficient to subject the patentee to specific jurisdiction in that state."  *Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 789 (Fed. Cir. 2011); *Avocent*, 552 F.3d at 1332 (holding that "letters threatening suit for patent infringement sent to the alleged infringer *by themselves* do not suffice to create personal jurisdiction" (internal quotation marks omitted)); *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) ("A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement.").  Similarly, an offer to license a disputed patent does not subject the patentee to specific personal jurisdiction. *See Red Wing*, 148 F.3d at 1361 (stating that an "offer to license is more closely akin to an offer for settlement of a disputed claim rather than an arms-length negotiation" and that such letters should be treated the same as cease-and-desist letters).

It is important to emphasize that this is not a bright-line rule.  *See Jack Henry & Assocs., Inc. v. Plano Encryption Techs. LLC*, 910 F.3d 1199, 1206 (Fed. Cir. 2018).  The Federal Circuit's position is grounded in considerations of fairness—*i.e.*, the third prong of the three-part test.  In the ordinary case, it is unfair to subject a foreign patentee to personal jurisdiction in the forum state merely because it sends a few letters warning of infringement, threatening litigation, and/or soliciting a licensing agreement to an alleged infringer in the forum state.  In such cases, the judicial system's preference for settlement and efficient resolution of controversies favors giving

the patentee "sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum." *Red Wing*, 148 F.3d at 1360-61.

But, depending on the circumstances, other considerations may come into play that change the fairness analysis. The Federal Circuit's decision in *Jack Henry* is illustrative. There, the dispute concerned proper venue in a multidistrict state pursuant to 28 U.S.C. § 1391(d), which provides that a resident corporation is "deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." A patentee located in the Eastern District of Texas claimed that it did not have sufficient contacts in the Northern District of Texas to make venue proper there. *See Jack Henry*, 910 F.3d at 1203.

The Federal Circuit found specific jurisdiction—and therefore venue—in the Northern District proper. *See id.* at 1206. The patentee had sent letters to eleven banks located in the Northern District, alleging that they had infringed the same patents and offering them non-exclusive licenses. *Id.* at 1201. The patentee also sent a second round of letters threatening litigation. *See id.* at 1203. Focusing on the fairness prong, the Federal Circuit found the exercise of personal jurisdiction fair, notwithstanding the case law discussed above. The court noted that the patentee was subject to general jurisdiction in Texas, was registered to do business throughout the state, was physically located in the nearby Eastern District, had undertaken a "licensing program" directed towards multiple banks in the Northern District, had provided detailed accusations of infringement, and had only one business—licensing and litigating patents. *Id.* at 1204-05.

As *Jack Henry* demonstrates, "[w]here the patentee has engaged in sufficient additional conduct, beyond merely informing others of its patent rights and its intention to enforce those

rights through litigation," the patentee may be subject to "a [noninfringement] declaratory judgment action brought in the foreign forum to which the patentee directed its actions." *Campbell Pet Co. v. Miale*, 542 F.3d 879, 885 (Fed. Cir. 2008) (collecting cases).

Therefore, the question is whether Xerox has sufficiently alleged or shown such "additional conduct." The Court answers that question in the negative.

The Court draws the following from Xerox's allegations and the evidence in the record. Over the course of a year, MPV and Dominion regularly conversed with Xerox about the disputed patents, going so far as to threaten litigation. But the emails between the parties show that the discussion was a mutual process. MPV and Dominion first contacted Xerox in April 2019, and Xerox responded that it would "take a look" at MPV's claims and "get back to [them] regarding next steps." ECF No. 13-2 at 8. The parties held several phone and web conferences before discussions broke down in April 2020. *See* ECF No. 13-1 at 4; ECF No. 13-3 at 3. Although Xerox describes MPV and Dominion's actions in sensationalist terms—accusing them of "aggressively escalat[ing] [their] rhetoric" and "issu[ing] clear threats of litigation" during negotiations—the substance of the negotiations appears fairly unremarkable: a patentee reaches out to negotiate a potential resolution of an infringement claim; the parties discuss their points of view; and discussions break off with an eye towards litigation. ECF No. 1 at 4; ECF No. 24 at 7.

Thus, even construing the facts in Xerox's favor, MPV and Dominion's conduct falls within the latitude the Federal Circuit affords to patentees to notify potential infringers and seek nonjudicial resolution without subjecting themselves to personal jurisdiction. *See Red Wing*, 148 F.3d at 1360-61; *see also Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1361 (Fed. Cir. 2001) ("[W]arning letters from and *negotiations for* a license with an out-of-state patentee cannot, without more, support personal jurisdiction in an action for a declaratory judgment of patent

9

invalidity and noninfringement." (emphasis added)).  To be sure, the quantity of MPV and Dominion's communications with Xerox went beyond one or two letters, but the Court does not consider that a distinguishing factor.  The purpose of the Federal Circuit's rule is to incentivize negotiations and the efficient resolution of disputes.  *Red Wing*, 148 F.3d at 1361.  Where, as here, the accused infringer agrees to correspond with the patentee and engages in further discussions, subjecting the patentee to personal jurisdiction after some arbitrary number of communications does little to incentivize settlement.  If anything, it achieves the opposite.

At bottom, Xerox premises specific jurisdiction on MPV and Dominion's communications and discussions with it.  The Court concludes that such activities, standing alone, are insufficient to confer specific jurisdiction, and Xerox does not allege any other conduct that tips the scales in its favor.

Therefore, as it stands, the Court is prepared to grant MPV's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2).  But because the Court will permit limited discovery, MPV's motion will be denied without prejudice.

## II.  Request for Jurisdictional Discovery

Xerox requests that it be allowed to take jurisdictional discovery before the case is dismissed.  ECF No. 24 at 22–23.

"It is well settled under Second Circuit law that, even where plaintiff has not made a *prima facie* showing of personal jurisdiction, a court may still order discovery, in its discretion, when it concludes that the plaintiff may be able to establish jurisdiction if given the opportunity to develop a full factual record."  *Miami Products & Chem. Co. v. Olin Corp.*, No. 19-CV-385, 2020 WL 1482139, at *31 (W.D.N.Y. Mar. 27, 2020).  "In this Circuit, jurisdictional discovery is permitted where a plaintiff has made a sufficient start toward establishing personal jurisdiction, such that it

appears there may be a colorable jurisdictional claim." *Id.* (internal quotation marks omitted). "The decision of whether or not to allow discovery is within the Court's sound discretion." *Rates Tech. Inc. v. Cequel Comm'ns, LLC*, 15 F. Supp. 3d 409, 421 (S.D.N.Y. 2014).

The Court grants Xerox's request in part and permits limited jurisdictional discovery solely on the issue of specific personal jurisdiction. As to general jurisdiction, Xerox fails to proffer allegations that come close to meeting the strict *Daimler* standard. While Xerox identifies a number of issues bearing on general jurisdiction that could be investigated through discovery, ECF No. 24 at 23, it does not disclose what exactly its suspicions are or articulate a colorable theory as to how MPV could be subject to general jurisdiction under *Daimler*. Consequently, this is not a case where the plaintiff has asserted "specific, non-conclusory facts that, if further developed, could demonstrate substantial state contacts," *Viko v. World Vision, Inc.*, No. 08-CV-221, 2009 WL 2230919, at *16 (D. Vt. July 24, 2009), but is instead more akin to a fishing expedition. *Bertolini-Mier v. Upper Valley Neurology Neurosurgery, P.C.*, No. 16-CV-35, 2016 WL 7174646, at *6 (D. Vt. Dec. 7, 2016) ("Courts do not permit jurisdictional discovery for the purpose of a fishing expedition." (internal quotation marks omitted)).

As to specific jurisdiction, however, the Court is satisfied that Xerox has made "a sufficient start" to justify discovery. The Federal Circuit's standard for specific jurisdiction in these sorts of cases is highly fact-sensitive, *see Jack Henry*, 910 F.3d at 1206, and Xerox has colorably argued that MPV and Dominion are in the business of enforcing their patent portfolio and have repeatedly done so in New York. *See* ECF No. 24 at 17-19. It is not wholly speculative that MPV and Dominion have engaged in other enforcement activities related to these patents in a manner that subjects MPV to personal jurisdiction in New York.

That being said, such discovery will be limited.  Specifically, Xerox may obtain jurisdictional discovery only to the extent it is relevant to MPV's (or its affiliated companies)[3] enforcement of the disputed patents in New York.  *See Avocent*, 552 F.3d at 1334 (noting that the question for specific jurisdiction is whether the patentee has engaged in other activities "that relate to the *enforcement . . . of the relevant patents*" (emphasis added)).  As a result, Xerox may not seek discovery that either concerns patents not at issue in this case or relates to the patents at issue but pertains to enforcement or business activities in other states.  Besides this limitation, jurisdictional discovery will be guided by the normal rules for discovery under the Federal Rules of Civil Procedure.  The Court sets the applicable deadlines below.

## III.  *Pro Hac Vice* Motions

Xerox has moved to have attorneys Raghav Krishnapriyan and Catherine Y. Kim admitted to this Court *pro hac vice,* in order to appear in this action.  ECF Nos. 25, 26.  The required admission fees have been paid to the Clerk of Court.  After reviewing the applications of Mr. Krishnapriyan and Ms. Kim, which are sponsored by John Joseph Pelligra, a member of this Court's bar, those applications are granted.

## CONCLUSION

For the reasons discussed above, the applications of Mr. Krishnapriyan and Ms. Kim to be admitted *pro hac vice* to this Court (ECF Nos. 25, 26) are GRANTED for the purpose of representing Xerox in this action.

---

[3] Xerox claims that MPV is in fact "acting as an enforcement arm for the broader Dominion Harbor family."  ECF No. 24 at 14.  Although technically nonparties, Xerox has articulated a good faith basis to believe that their operations overlap.  *See id.* at 14-17.  For that reason, the Court will permit Xerox to seek discovery from the affiliated entities pursuant to Rule 45, but only to the limited extent described above.  If those entities object to such action, they may seek relief with the Court.

MPV's motion to dismiss (ECF No. 13) is DENIED WITHOUT PREJUDICE.  Xerox's request for jurisdictional discovery is GRANTED IN PART.  For purposes of jurisdictional discovery, the Court orders the following:

1. The parties shall meet and confer to decide on a mutually agreeable schedule for jurisdictional discovery.  Discovery must in any case be completed by November 30, 2020.

2. The parties shall submit their proposed discovery schedule to the Court for approval by August 31, 2020.

3. By December 14, 2020, MPV may file a renewed motion to dismiss under Rule 12(b)(2). The Court will set a briefing schedule thereafter.

4. As to any renewed motion to dismiss, the parties need not address general personal jurisdiction, as the Court has already resolved that issue as set forth herein.  The only remaining issues are specific personal jurisdiction and venue.

IT IS SO ORDERED.

Dated: August 18, 2020
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

13