UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

XEROX CORPORATION,

                                Plaintiff,

                                                                                                                        Case # 20-CV-6263-FPG

v.

                                                                                                                  DECISION AND ORDER

MONUMENT PEAK VENTURES, LLC,

                                Defendant.
_____

## INTRODUCTION

Plaintiff Xerox Corporation ("Xerox") brings this declaratory judgment action, alleging that it has not infringed upon certain patents held by Defendant Monument Peak Ventures, LLC ("MPV"). ECF No. 1. On August 18, 2020, the Court denied without prejudice MPV's motion to dismiss the case for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and permitted limited jurisdictional discovery on specific personal jurisdiction. ECF No. 28. The parties have completed that discovery and MPV has renewed its motion to dismiss for lack of personal jurisdiction. ECF No. 31. Xerox opposes the motion. ECF No. 41. For the reasons that follow, Defendant's motion to dismiss is GRANTED and this matter is TRANSFERRED to the Eastern District of Texas.

## BACKGROUND

The Court assumes the parties' familiarity with the underlying facts and the full record of prior proceedings in this matter. The Court previously determined that Xerox had not met its burden of showing that MPV is subject to general personal jurisdiction in New York and, therefore, the Court directed the parties that any renewed motion to dismiss "need not address general

personal jurisdiction, as the Court has already resolved that issue." ECF No. 28 at 6, 13. Accordingly, the only remaining issue for the Court to consider is specific personal jurisdiction.

In its August 18, 2020 Decision and Order, the Court noted that "even construing the facts in Xerox's favor, MPV and Dominion's[1] conduct falls within the latitude the Federal Circuit affords to patentees to notify potential infringers and seek nonjudicial resolution without subjecting themselves to personal jurisdiction." ECF No. 28 at 9 (citing *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360-61 (Fed. Cir. 1998)) (additional citation omitted). Ultimately, the Court concluded that the contacts Xerox alleged—communications and discussions between the parties regarding MPV and Dominion's alleged patent rights, and their attempts to enforce those rights—were insufficient to confer specific jurisdiction. ECF No. 28 at 8-10.

With jurisdictional discovery complete, the Court reconsiders whether it may exercise specific personal jurisdiction over MPV in this matter. In addition to briefing, Xerox submitted to the Court a Notice of Supplemental Authority Regarding Defendant's Motion to Dismiss, ECF No. 42, arguing that the Federal Circuit's decision in *Trimble, Inc. v. PerDiemCo LLC,* 997 F.3d 1147 (Fed. Cir. 2021) "is pertinent to MPV's motion to dismiss." ECF No. 42 at 1. MPV responded to that Notice, arguing, *inter alia*, that *Trimble* was decided "on the facts of [the] case," and that the *Trimble* court's analysis "does not warrant changing the analysis the Court already performed and does not change the result in this case." ECF No. 43 at 1, 2.

---

[1] The Court assumes, as it did in its August 18, 2020 Decision and Order, that it may properly consider the Dominion Harbor Group's ("Dominion") contacts with New York in assessing personal jurisdiction as to MPV.  *See* ECF No. 28 at 5 n.2 (citing *Celgard, LLC v. SK Innovation Co., Ltd.*, 792 F.3d 1373, 1379 (Fed. Cir. 2015)). Dominion and MPV are affiliated entities.  *See* ECF No. 28 at 5.

## DISCUSSION

### I. Legal Standard

"A defendant may move to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2)." *JetBlue Airways Corp. v. Helferich Patent Licensing, LLC*, 960 F. Supp. 2d 383, 390 (E.D.N.Y. 2013). In a patent action such as this, "the existence of personal jurisdiction is, under Federal Circuit law, determined in accordance with the law of the Court of Appeals for the Federal Circuit." *Id.*; *see also Arquest, Inc. v. Kimberly-Clark Worldwide, Inc.*, No. 07-CV-1202, 2008 WL 2971775, at *4 (S.D.N.Y. 2008).

"A court has personal jurisdiction over a nonresident defendant if the forum state's long-arm statute permits service of process and the assertion of personal jurisdiction comports with due process." *New World Int'l, Inc. v. Ford Global Techs., LLC*, 859 F.3d 1032, 1037 (Fed. Cir. 2017). "Where a defendant is not subject to general personal jurisdiction in the forum state, a district court may nonetheless exercise specific personal jurisdiction over the defendant subject to a three part test":

> (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair.

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1018 (Fed. Cir. 2009). "The plaintiff bears the burden of affirmatively establishing the first two elements of the due process requirement." *Celgard, LLC v. SK Innovation Co., Ltd.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015). "With respect to the last prong, the burden of proof is on the defendant, [who] must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008).

## II. Specific Jurisdiction

"The contacts needed for [specific] jurisdiction often go by the name 'purposeful availment.'" *Trimble Inc.*, 997 F.3d at 1153 (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021)) (alteration in original). In the context of specific personal jurisdiction, "purposeful availment" means the defendant has undertaken "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." *Id.* (alteration in original) (internal quotation marks omitted). "The contacts 'must show that the defendant deliberately reached out beyond its home.'" *Id.* (quoting *Ford Motor Co.*, 141 S. Ct. at 1025) (some internal quotation marks omitted)). However, the exercise of specific personal jurisdiction "is limited" in that "[t]he plaintiff's claims . . . must arise out of or relate to the defendant's contacts with the forum." *Id.* (internal quotation marks omitted). In *Trimble*, the Federal Circuit discussed *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998), and distilled "subsequent developments" which "have clarified the scope of *Red Wing*." *Trimble, Inc.*, 997 F.3d at 1154. The Court considers those developments in discussing MPV's contacts with New York.

MPV, a Texas limited liability company with its principal place of business in Plano, Texas, acquired a patent portfolio that had been sold by the Eastman Kodak Company several years earlier. ECF No. 31-1 at 6-7. In April 2019, MPV, through Dominion, emailed Xerox, a corporation based in Rochester, New York, about licensing eight patents (the "patents-in-suit"). ECF No. 24 at 6; ECF No. 28 at 2. Discussions continued before breaking down in April 2020. ECF No. 28 at 9. The Court previously concluded that the communications and discussions between MPV and Xerox, "standing alone, are insufficient to confer specific jurisdiction" and that, prior to the limited jurisdictional discovery that has now been conducted in this matter, "Xerox

4

[had] not allege[d] any other conduct that tips the scales in its favor." ECF No. 28 at 10. The Court also concluded that the substance of the parties' negotiations was "fairly unremarkable," summarizing them as follows: "a patentee reaches out to negotiate a potential resolution of an infringement claim; the parties discuss their points of view; and discussions break off with an eye towards litigation." *Id.* at 9.

"[I]n the context of patent litigation, communications threatening suit or proposing settlement or patent licenses can be sufficient to establish personal jurisdiction." *Trimble, Inc.*, 997 F.3d at 1155. In addition to the communications with Xerox discussed above, Xerox argues that discovery has revealed that MPV had New York-related contacts with at least six other companies.[2] MPV sent an initial letter to Company A at a Woodbury, New York address. ECF No. 41 at 7. Company A is neither incorporated in New York nor maintains offices in New York. ECF No. 47 at 9. After the initial letter to Company A, MPV was redirected to Japan for all subsequent communications. ECF No. 41 at 7. No additional activities were directed to New York, however "claim charts" provided to Company A did include one of the patents-in-suit.[3] *Id.* MPV sued Company A in the Eastern District of Texas in 2020. *Id.*

MPV sent an initial email to an individual at Company B, which is not incorporated in New York but is headquartered there. ECF No. 47 at 7, 9. The email recipient was listed online as located in Company B's New York office and MPV concedes that the individual "may have been in New York." *Id.* at 7; ECF No. 41 at 7. After the initial outreach, MPV was redirected to various

---

[2] The parties' briefing related to MPV's motion to dismiss is sealed as it contains information designated as "Attorneys' Eyes Only" and/or confidential information produced pursuant to Local Patent Rule 2.2. *See* ECF Nos. 33, 36, 37, 39, 40, 41. Accordingly, the Court will refer to the companies at issue as Companies "A" through "F" since the only mention in the record of the names of those entities is in the parties' sealed briefing.

[3] MPV provided "claim charts" to licensing targets which were typically prepared as a list of a subset of the patents in the Kodak portfolio which MPV was potentially seeking to enforce. [4] Xerox asserts that this suit involved one of the patents-in-suit, while MPV states it involved two. ECF No. 41 at 8; ECF No. 47 at 9.

Company B entities in Japan for subsequent communications and met with Company B representatives there. ECF No. 41 at 7. MPV sued Company B and a subsidiary in the Central District of California, and that suit involved either one or two of the patents-in-suit.[4] ECF No. 41 at 8; ECF No. 47 at 9.

Turning to Company C (and its subsidiary), MPV sent an initial email to Company C in New York, however, subsequent communications with Company C and its subsidiary were with subsidiary representatives in Wisconsin and the parties met in Massachusetts. ECF No. 41 at 7. MPV sued Company C and its subsidiary in the Southern District of California in 2018, and, while MPV asserts that the lawsuit did not involve any of the patents-in-suit, Xerox indicates that the matter resolved with MPV "licens[ing] the Kodak portfolio, including [the] patents-in-suit" to Company C and its subsidiary. ECF No. 41 at 7; ECF No. 47 at 8.

Company D is incorporated, but does not maintain offices, in New York. ECF No. 41 at 7; ECF No. 47 at 9. All communications between MPV and Company D were with representatives in Company D's New Jersey headquarters. ECF No. 41 at 7. Though MPV included one of the patents-in-suit on a claim chart supplied to Company D, a subsequent lawsuit brought in 2019 in the Southern District of New York did not involve any of the patents-in-suit. ECF No. 41 at 7; ECF No. 47 at 9.

Company E is neither incorporated in New York nor maintains offices there. MPV sent an initial letter to California where Company E is located and was redirected to Company E's outside counsel "who may be in New York." ECF No. 41 at 7; ECF No. 47 at 10. Subsequent discussions with Company E's "in-house personnel" were with employees located in China. ECF No. 41 at 7-8. MPV's claim chart provided to Company E included at least one of the patents-in-suit. ECF

---

[4] Xerox asserts that this suit involved one of the patents-in-suit, while MPV states it involved two. ECF No. 41 at 8; ECF No. 47 at 9.

No. 41 at 7; ECF No. 47 at 10.  The parties' papers do not indicate that MPV has taken any judicial action against Company E.  *Id.*

Finally, Company F is not incorporated in New York but does maintain an office there. ECF No. 41 at 8; ECF No. 47 at 10.  MPV sent communications to Company F in New York regarding licensing its entire Kodak portfolio.  *Id.*  However, it appears the action has not proceeded any further at this time.

Distilling down these contacts, it is noteworthy, as MPV points out, that "MPV has never judicially enforced a patent in suit in New York" and "[n]o litigation cited by Xerox involved any patent in suit and a New York resident."  ECF No. 41 at 8.  To be sure, MPV's contacts described above with entities other than Xerox are "relevant in assessing the link between the defendant's forum contacts and the plaintiff's suit."  *Trimble, Inc.*, 997 F.3d at 1156 (citing *Ford Motor Co.*, 141 S. Ct. at 1031-32).  However, MPV's conduct falls short of that of other defendants over whom courts have exercised personal jurisdiction in similar contexts.  Lacking from the record is the specter of a calculated and programmatic assault on the forum.  *Cf. Jack Henry & Associates, Inc. v. Plano Encryption Technologies LLC*, 910 F.3d 1199, 1204-06 (Fed Cir. 2018) (finding the exercise of personal jurisdiction reasonable where defendant had "undertaken a licensing program, with threats of litigation," directed to eleven banks conducting banking activity in the forum); *see also Ford Motor Co.*, 141 S. Ct. at 10 ("[W]hen a corporation has continuously and deliberately exploited a State's market, it must reasonably anticipate being haled into that State's courts.") (citations, internal quotation marks, and alterations omitted).  This is especially apparent when contacts with the six entities above are considered in the context of MPV having contacted "in excess of a hundred companies" regarding licenses for some or all of the patents in the Kodak portfolio.  ECF No. 47 at 6.

Indeed, MPV's conduct is more akin to conduct that has been deemed insufficient to find personal jurisdiction. It falls "within the latitude the Federal Circuit affords to patentees to notify potential infringers and seek nonjudicial resolution without subjecting themselves to personal jurisdiction." ECF No. 28 at 9 (citation omitted); *see also Red Wing Shoe Co., Inc.*, 148 F.3d at 1361 ("Standards of fairness demand that [defendant] be insulated from personal jurisdiction in a distant foreign forum when its only contacts with that forum were efforts to give proper notice of its patent rights."). MPV's New York contacts appear more "random, isolated, or fortuitous," than deliberate. *Ford Motor Co.*, 141 S. Ct. at 1025. Accordingly, the Court finds that it lacks specific jurisdiction over MPV. This outcome is in accordance with the purpose of the Federal Circuit's cases on the subject, which aim to incentivize negotiations and the efficient resolution of disputes. *See Red Wing*, 148 F.3d at 1361.

### III. Transfer

"Courts enjoy considerable discretion in deciding whether to transfer a case in the interest of justice." *Daniel v. American Bd. of Emergency Medicine*, 428 F.3d 408, 435 (2d Cir. 2005). Indeed, "a district court has the authority to transfer a case even where it lacks personal jurisdiction over it." *Mirman v. Feiner*, 915 F. Supp. 2d 282, 284 (E.D.N.Y. 2013); *see also WorldCare Ltd. Corp. v. World Ins. Co.*, 767 F. Supp. 2d 341, 364-65 (D. Conn. 2011) ("The Supreme Court and Second Circuit have held that a district court has the power to transfer a case to another judicial district, whether or not the transferring court has personal jurisdiction over the defendant.").

"Whether dismissal or transfer is appropriate lies within the sound discretion of the district court." *WorldCare Ltd. Corp.*, 767 F. Supp. 2d at 364-65 (quoting *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993)). "A district court may transfer a case on a motion by either party

or *sua sponte* on its own motion." *Id.* (citing *Concession Consultants, Inc. v. Mirisch*, 355 F.2d 369, 371–72 n. 3 (2d Cir.1966)).

Here, "MPV submits that transfer to the Eastern District of Texas, its home jurisdiction, would be just and appropriate." ECF No. 31-1 at 16 n.3. Accordingly, rather than dismiss this case—which has been pending in this Court since April 2020—the Court exercises its considerable discretion and TRANSFERS this matter to the Eastern District of Texas in the interest of justice.

## CONCLUSION

For the reasons discussed above, MPV's motion to dismiss, ECF No. 31, is GRANTED, and this matter is TRANSFERRED to the Eastern District of Texas.

IT IS SO ORDERED.

Dated: August 31, 2021
       Rochester, New York

                                            HON. FRANK P. GERACI, JR.
                                            United States District Judge
                                            Western District of New York